UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-14060-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RONALD FONTECCHIO,

      Defendant.

_____/



FILED by _____ D.C.

NOV - 9 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE [D.E. #25]

**THIS CAUSE** having come on to be heard upon the aforementioned motion and this Court having reviewed the motion and the response, and having conducted an evidentiary hearing on November 7, 2007, this Court recommends to the District Court as follows:

1.    The Defendant's motion seeks suppression of all statements made by the Defendant as well as any physical evidence obtained pursuant to a search of his computer. The Defendant asserts that his statements to law enforcement were made without advice of <u>Miranda</u> and were not voluntary. Further, the Defendant submits that any evidence obtained from his computer and hard drive which were purportedly surrendered voluntarily pursuant to a written Consent To Search, should be suppressed as fruit of the poisonous tree.

2.    The government called Detective Brian Broughton of the Martin County Sheriff's Office as its sole witness. Detective Broughton has been involved in investigating crimes against children for in excess of ten years. He is also a computer forensic examiner and has performed those tasks since 2004. He is also part of the State Task Force relating to these issues concerning crimes against children.

3.    During an investigation begun during the summer of 2007, Detective Broughton was searching on the Internet for persons who may have been distributing child

pornography. This was part of a large investigation of various agencies in this area. While doing Internet checks of various Internet protocol numbers (IP numbers), he came across an IP number registered with Comcast services which appeared to have been accessing child pornography. He requested information from Comcast as to the ownership of that particular IP number and it came back as registered to the Defendant's residence located at 3721 S.E. Dixie Ross Street in Stuart, Florida. The information from Comcast confirmed that it was registered to this Defendant at that address as of March of 2007. This was the most recent date that Comcast could give concerning their records.

4.      Detective Broughton testified that various images of child pornography which are transmitted and shared over the Internet have certain numbers attached to them for identification purposes.      Based upon his prior investigative experience, Detective Broughton identified certain of the downloaded items attributed to the Defendant's IP address as being some of these known child pornographic images.  Based upon that information, Detective Broughton decided that he should go to the residence to determine who was downloading and possibly distributing these child pornographic images.

5.      On July 6, 2007, Detective Broughton and his partner, Detective Colasuonno, went to the Defendant's residence at the address listed above.  Both detectives were dressed in street clothes with their badge and gun visible. They were not wearing jackets. This occurred around 4:30 to 5:00 p.m. in the afternoon. The address was a duplex with the residence on the left being the one occupied by the Defendant.  The residence to the right in the duplex appeared to be under construction.

6.      Detective Broughton knocked on the door and windows for at least ten minutes.   There was very loud music emanating from inside the residence, so the detectives did believe there was someone inside. Just before they were about to leave the residence, the Defendant responded to the knock on the door and opened it. Detective Broughton also testified that prior to going to the residence, he had checked the Florida

2

Motor Vehicle Records. He determined that the Defendant and his son had vehicles registered at that particular address in their names.

7.    Prior to arriving at the Defendant's residence, Detective Broughton had placed a small digital tape recorder in his shirt pocket and turned it on. There is no indication that the recorder was visible to the Defendant. The Defendant was not advised that the recorder was on and that the interview with the Defendant was being recorded. Government Exhibit No. 1 admitted into evidence is a compact disc containing the audio of everything recorded by Detective Broughton from prior to entering the residence until the conclusion of his interview with the Defendant.

8.    As the Defendant opened the door to his residence, Detective Broughton is heard introducing himself and his partner as police officers. Detective Broughton explains that he is a detective with the crimes against children division of his department and they were there investigating possible downloading and distribution of child pornography by someone, via computer, at the Defendant's residence. Detective Broughton identified the Defendant at the hearing as being the same individual who invited them into the residence and whom he subsequently interviewed.

9.    The Defendant was asked if he knew anything about the downloading of child pornography on a computer at that residence and utilizing the particular Comcast account. The Defendant said that he did and that it was him. The Defendant stated that he was just curious and was not a pervert. He told the detectives that he was just interested in looking at weird or different types of pornography on the Internet after having gone through all the regular pornography on the Internet. He reiterated that he looks for something strange, weird and out of the ordinary. The Defendant told the detectives that he had been divorced for a while and that he has two children, ages 14 and 19. The minor child sees him regularly on visitation days.

3

10. Detective Broughton explained to the Defendant how law enforcement locates child pornography on line with certain computer programs. The Defendant said that he downloads mostly movies by certain search terms to find what he is looking for. He stated that he looks for mainly young girls involved with adult males. He stated that the youngest that he has viewed would probably involve children 9, 10 and 11 years of age. The Defendant stated that he kept the pornography for himself.

11. Detective Broughton testified that he did not read the Defendant Miranda at any time during the interview because it was a non-custodial interview. He told the Defendant that he was not going to be arrested. He testified that he did not arrest the Defendant on the spot, even after the Defendant admitted to downloading the pornography, because he needed to view the images first to determine if they actually met the legal definition of child pornography. He testified that on some occasions citizens believed that they may be viewing child pornography on their computer when, in fact, it is simply "child erotica." He gave an example of "child erotica" as being photos of a nude minor not engaged in any type of sexual activity or conduct. He did not want to make a formal arrest until he had an opportunity to forensically review the contents of the Defendant's computer to determine if in fact the images were child pornography.

12. Detective Broughton testified that at no time was the Defendant handcuffed or restrained in any way. In fact, the Defendant was the one who invited them into his home and directed where everyone should sit. Detective Colasuonno stood through most of the interview except for a short period of time when he moved to another area of the home to answer a phone call. Further, the Defendant was permitted to go to the bathroom and remove the shaving cream that was on his head when he answered the door. Apparently the Defendant was shaving his head when the detectives arrived.

13. During the interview the Defendant is heard saying that he guessed he had one hundred images in his computer files containing child pornography.   Detective

4

Broughton is heard telling the Defendant that he wants to make sure by viewing the images. The Defendant stated that he has not produced any child pornography nor taken any photographs of his own. He said he only viewed what he found on the internet and downloaded. Detective Broughton made certain that the Defendant understood that it was illegal to have child pornographic images.

14.     The Defendant told Detective Broughton what type of computer he had and that he had an external hard drive as well. Again, Detective Broughton made certain that the Defendant understood that he was not going to be arrested at that time. Detective Broughton asked the Defendant if he would allow them to take the computer to their office to examine it and verify what was on it. The Defendant agreed. He explained to the Defendant that they would take a "mirror image" of the hard drives involved and not "mess with" any of the information contained on the hard drives. The only exception would be that if there were any child pornographic images on the hard drives, they would have to be deleted before the computer was returned to the Defendant. The Defendant stated that he understood. The Defendant is heard telling the detectives to do whatever they needed to do.

15.     A written Consent To Search form, Government Exhibit No. 2 admitted into evidence at this hearing, was read to the Defendant by Detective Broughton. The Defendant was permitted to read along with Detective Broughton as he went over the form with the Defendant. The Defendant then signed the Consent To Search form and assisted the detectives in unhooking the computer and external hard drive. The detectives were then permitted to take those items from the residence.

16.     The detectives are overheard giving the Defendant a business card. The Defendant was told that they would get back with him after they had an opportunity to examine the computer and the hard drives. During the interview, there was no coercion, intimidation or threats made by either of the detectives towards the Defendant. The Court

5

agrees with the characterization of Detective Broughton in his testimony that the mood of the conversation/interview was cordial and friendly. There were many times when Detective Broughton and the Defendant are overheard laughing or simply engaged in normal conversation.

17. After reviewing the computer and the hard drives at his office, Detective Broughton found what he believed to be several child pornographic images. The majority of the images had been transferred to an external hard drive which could not be accessed by other individuals over the Internet. However, there were a few images of child pornography still on the computer hard drive and which had not yet been transferred to folders. These were accessible to other people on the Internet who had the ability to upload those files.

18. Based upon his finding these images, an arrest warrant was issued and the Defendant was arrested on State charges. This case resulted from those charges. Detective Broughton had no further contact with the Defendant after the interview on July 6, 2007 related herein. Detective Broughton has not conducted any other searches in respect to this case.

19. On cross-examination, counsel for the Defendant addressed the fact that Detective Broughton is 6'7" and weighs approximately 300 pounds. However, Detective Broughton stated that at no time did he use his size to intimidate or otherwise coerce the Defendant to cooperate with him. He said that the Defendant was cordial and friendly throughout their contact on July 6, 2007.

20. Detective Broughton testified on cross-examination that he never specifically told the Defendant that any answers he gave were purely voluntary or that the Defendant was free to leave or that the Defendant was free to tell the detectives to leave. He pointed out that the Defendant was allowed to go to the bathroom by himself and his movement about his residence was not restricted in any way.

6

21.     Detective Broughton pointed out that until such time as the Defendant admitted being the one that had downloaded the child pornography, he had no idea who the investigation was centering upon. The only information he had at that time was that someone at that address was utilizing a computer with the particular IP address to access and download child pornography. Therefore, there was no investigation targeting or centering on the Defendant until he admitted downloading child pornography during this interview.

22.     Detective Broughton testified that neither he nor Detective Colasuonno locked the doors in the Defendant's house. The Defendant was never prevented from moving about therein. They did not conduct any search or sweep of the house. They did not attempt to intimidate the Defendant when they entered. The Defendant was the one who showed the detectives where the computer and external hard drive were located in another room. The Defendant assisted them in unhooking the computer and external hard drive after signing the Consent To Search.

23.     When asked on cross-examination why he did not allow the Defendant to simply access the files on site, Detective Broughton stated that he wanted to maintain the integrity of the information, the files and the access dates that were on the computer and the external hard drive.

24.     The government called no other witnesses at the hearing. The Defendant presented no witnesses or evidence at the hearing. Arguments made by counsel at the hearing and by counsel in their papers are considered by this Court.

## ANALYSIS

25.     The Defendant does not challenge the surreptitious recording of the conversation between the detectives and the Defendant. Such a recording is permitted by Title 18, United States Code, § 2511(2)(c).

7

26.     This Court has reviewed the recording.  It substantiates the testimony of Detective Broughton at the hearing.  There is no evidence in the record before this Court as to any coercion, intimidation, threats or other means utilized by Detective Broughton or his partner in obtaining the statement from the Defendant.

27.     The Defendant was not in custody during the interview.  A defendant is in custody for the purposes of Miranda when there has been a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest.  The test is objective in that the actual, subjective beliefs of the defendant and the interviewing officers on whether the Defendant was free to leave are irrelevant.  United States v. Brown, 441 F.3d 1330 (11th Cir. 2006).  The objective evidence in this case establishes that the Defendant invited the detectives into his home knowing that they were law enforcement officers.  He freely entered into the conversation with the officers who informed him that he was not going to be arrested.  The Defendant knew the subject matter of the interview and at no time was prevented from moving about his residence.

28.     The totality of the circumstances and evidence surrounding the interview of the Defendant strongly establish that he was under no restraint on his freedom of movement whatsoever.  See United States v. Padilla, 2006 WL 3678567 (S.D. Fla. 2006).  Even if the Defendant had not been arrested, advice of Miranda would have been required if there was a finding of a restraint on his freedom of movement to the degree normally associated with a formal arrest.  United States v. Muegge, 225 F.3d 1267 (11th Cir. 2000).  However, the record is completely devoid of any evidence to suggest any restraint of freedom of movement.

29.     Once it is established that the Defendant was not in custody and that there was no requirement to advise him of his Miranda rights, this Court must determine whether or not his statement was in fact voluntarily made.  In making such a determination, this Court takes into consideration the totality of all of the surrounding circumstances, involving

8

both the characteristics of the Defendant as well as the details of the interrogation. Waldrop v. Jones, 77 F.3d 1308 (11th Cir. 1996). Even though this was a non-custodial interview, this Court must make a finding as to the voluntary nature of the subsequent statement made as recorded on Government's Exhibit No. 1.

30.    There is no evidence in the record which would suggest any police overreaching nor any attempt by the detectives involved in this case to take advantage of the Defendant in any way. It appears as though the Defendant is an educated and intelligent individual. He was able to converse in detail concerning the issues as well as the workings of computer programs relating to the investigation. The Defendant was not detained in any way so that is not an issue. There was no prolonged or repeated interrogation. The interrogation was relatively short in nature and was conducted in the Defendant's own living room. In short, there are no suggestions nor evidence of any circumstance which would suggest that the detectives took advantage of the Defendant or otherwise intimidated him to the degree that his statement would be determined involuntary. See Dickerson v. United States, 120 S.Ct. 2326 (2000) and United States v. Anderson, 2007 WL 1970856 (S.D. Fla. 2007).

31.    Now that this Court has determined that the Defendant's statement had been voluntarily given to the officers and that said statement was not obtained in violation of any of the Defendant's Miranda rights, this Court moves to the issue of the written Consent to Search the computer. The evidence before this Court establishes that the Defendant was read the Consent To Search form, Government's Exhibit No. 2 by Detective Broughton. The Defendant was given an opportunity to read the Consent To Search form prior to signing it. The Defendant was not forced, tricked or otherwise coerced into executing the Consent To Search form. The Defendant assisted the detectives in unhooking the computer and external hard drive before it was voluntarily turned over to them by the

9

Defendant. The Defendant fully knew what the detectives were looking for in their desire to forensically examine the computer and associated hard drives.

32.   In analyzing the voluntariness of such a consent, this Court once again is directed to view the totality of the circumstances surrounding the consent given. This Court finds no coercive police procedures were utilized to have the Defendant execute the Consent To Search form. The form itself specifically advises the Defendant that he has a right to refuse to give consent to search his property. The Defendant's cooperation with the detectives is obvious from listening to the interview contained on Government's Exhibit No. 1. While this Court does not know the extent of the Defendant's education and intelligence, it is obvious from listening to the recorded interview that he is an intelligent individual. He was able to communicate with the detectives without any difficulty. He discussed the intricacies of computer on-line searching and utilization of certain programs to access, download and transfer files. Finally, this Court is satisfied that the Defendant was well aware of the evidence that the detectives were seeking in this case and that they were conducting an investigation concerning on-line child pornography which the Defendant admitted downloading via this computer. Therefore, this Court finds that the consent given by the Defendant was knowing and voluntary. See United States v. Alim, 2007 WL 2551564 (11th Cir. 2007) and United States v. Purcell, 236 F.3d 1274 (11th Cir. 2001).

33.   The Defendant makes a "fruit of the poisonous tree" argument in his motion. He alleges that his statement to Detective Broughton was obtained illegally and hence, any evidence obtained pursuant to his written consent is tainted and inadmissible. This Court disagrees since this Court has found that the underlying statements he made in his interview with the detectives were free and voluntarily given and not in violation of Miranda. The Defendant freely and voluntarily consented to seizure and search of his computer and associated hard drives. Therefore, this Court concludes that the evidence obtained from

10

the forensic examination of the computer and external hard drive are likewise admissible for the reasons set forth herein.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion To Suppress Statements And Evidence [D.E. #25] be **DENIED**.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, United States District Judge assigned to this case.

**DONE AND SUBMITTED** this _____ day of November, 2007, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Beth Sreenan
Darren D. Shull, Esq.

11